FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 JUN 22  PM 4: 53

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TRAVELERS PROPERTY CASUALTY AND CII CARBON, LLC | * | CIVIL ACTION |
| VERSUS | * | NO. 00-0130 |
| THE MG-332 AND MGR-39, her engines, tackle, boilers, furniture, apparel, etc., *in rem,* MGT SERVICES, INC. d/b/a MGT TRANSPORT d/b/a MGT-T SERVICES, INC., *in personam,* ST. JOHN FLEETING, INC., *in personam,* ST. JOHN FLEETING, LLC, *in personam,* ABC INSURANCE COMPANY, *in personam,* and XYZ INSURANCE COMPANY, *in personam* | * * * | SECTION "L"(2) JUDGE FALLON MAG. WILKINSON |

\*    \*    \*    \*    \*    \*    \*    \*    \*

## MOTION FOR SUMMARY JUDGMENT

**NOW INTO COURT,** through undersigned counsel, come WAYNE COXE, RODDY

HURST, and PROFESSIONAL MARINE SURVEYORS AND CONSULTANTS (hereinafter

collectively referred to as "Professional Marine"), who move this Honorable Court to render

Summary Judgment against plaintiff, Travelers Property Casualty and CII Carbon, LLC

(collectively hereinafter referred to as "Carbon"), on the grounds there is no genuine issue as to

any material fact, insofar as plaintiffs' claims against movers are concerned, and that movers are

entitled to Summary Judgment rejecting plaintiffs' demands as a matter of law.

Fee _____
Process _____
X Dktd _____
CtRmDep _____
Doc.No. _____

Respectfully submitted, June 22, 2001.

EMMETT, COBB, WAITS & KESSENICH

J. FREDRICK KESSENICH (La. 7354)
MICHAEL W. MCMAHON (La. 23987)
1515 Poydras Street, Suite 1950
New Orleans, Louisiana 70112
Telephone: (504) 581-1301
Telefax: (504) 581-6020
E-mail: rjw@ecwko.com

## CERTIFICATE

I hereby certify that a copy of the foregoing pleading has been served on all counsel by placing same in the United States Mail, postage prepaid and/or via facsimile and/or by hand, postage prepaid on June 22, 2001.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TRAVELERS PROPERTY CASUALTY<br>AND CII CARBON, LLC | * | CIVIL ACTION |
| | | |
| VERSUS | * | NO. 00-0130 |
| | | |
| THE MG-332 AND MGR-39, her engines, tackle, | * | SECTION "L"(2) |
| boilers, furniture, apparel, etc., *in rem,* MGT | | |
| SERVICES, INC. d/b/a MGT TRANSPORT | * | JUDGE FALLON |
| d/b/a MGT-T SERVICES, INC., *in personam,* | | |
| ST. JOHN FLEETING, INC., *in personam,* | * | MAG. WILKINSON |
| ST. JOHN FLEETING, LLC, *in personam,* | | |
| ABC INSURANCE COMPANY, *in personam,* | * | |
| and XYZ INSURANCE COMPANY, *in personam* | | |
| *   *   *   *   *   *   *   *   * | | |

## MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

This Memorandum is submitted on behalf of Wayne Coxe, Roddy Hurst and Professional

Marine Surveyors and Consultants (hereinafter collectively referred to as "Professional Marine"),

defendants herein, to support the uncontested facts and law establishing that there is no genuine

issue as to any material fact and that movers are entitled to summary judgment dismissing

plaintiffs' demands as a matter of law.

## INTRODUCTION

From June 19, 1999 through June 23, 1999, the M/S ARGONAUT was discharged of a full cargo of petroleum coke in bulk at Cooper/T. Smith Mile 180. Plaintiff, Carbon, entered into a Contract of Affreightment with barge owner M/G-T Services, Inc. (hereinafter "MG") for the transportation of green petroleum coke from Darrow, Louisiana to Carbon's facilities in Chalmette and Gramercy, Louisiana.[1] A portion of Carbon's cargo of coke was loaded into MG's Barges MG-332 and MGR-39 on June 21, 1999 and June 23, 1999, respectively. On June 26, 1999, while the Barges MG-332 and MGR-39 were moored at St. John's fleeting facility at Mile 141.5 on the Lower Mississippi River, the MG-332 sank pulling the MGR-39 down. The casualty resulted in the loss of the cargo and salvage expenses.

## PROCEDURAL HISTORY

In January, 2000, Carbon filed suit against MG for negligence, breach of the contract of affreightment, and breach of the implied warranty of seaworthiness.[2] Also named in the Complaint was St. John Fleeting, Inc. (hereinafter "St. John"), the fleeting facility were the MG barges were moored after loading and where the barges sank on June 26, 1999. In December 2000, Professional Marine, its senior surveyor Wayne Coxe, and its field surveyor, Mr. Roddy

---

[1]Exhibit "A "- Contract of Affreightment.

[2]Exhibit "B "- Verified Complaint for Damages.

-2-

Hurst were named as defendants by Carbon through an Amended Complaint for Damages.[3] The

Amended Complaint alleges that Professional Marine observe the loading of the Barges MG-332

and MGR-39.[4] Although not specifically stated in the Amended Complaint, presumably Carbon

is alleging Professional Marine was somehow negligent as an observer of the loading operations

conducted by Cooper/T. Smith Stevedoring.[5] Carbon's prefiling inquiry into the facts was

erroneous. The evidence will show Professional Marine did not observe the cleanliness and

loading of the MG-332 or MGR-39, nor had responsibility beyond performing draft surveys.

Accordingly, Professional Marine is entitled to summary judgment.

## UNDISPUTED FACTS

On December 24, 1998, Carbon entered into a Service Contract with Professional

Marine.[6] The Contract retained Professional Marine for the following defined services:

1.    **Cleanliness inspection** and certificates for barges and ships to load and/or

      discharge [Carbon's] coke.

---

[3]Exhibit "C" - Amended Complaint for Damages.

[4]*Id.* at Paragraph 14(a).

[5]The Amended Complaint (Paragraph 28) includes allegations that Professional Marine breach the contract of affreightment and an implied warranty of seaworthiness. Clearly, those allegation should be dismissed as Professional Marine was not privy to the contract of affreightment and was not the owner of the barges.

[6]Exhibit "D" - Service Contract dated December 24, 1998; See also, Exhibit "E"; Deposition of Professional Marine, pp.31-33.

2.    **Draft surveys** for barges and ships (emphasis added).[7]

To determine what barges to inspect, Professional Marine obtained a "Stowage Plan" from Cooper/T. Smith Stevedoring indicating the barges to be loaded.[8]   Mr. Wayne Coxe of Professional Marine performed a cleanliness inspection of the Barge MG-332 and MGR-39, among others, on June 18, 1999.[9]   The inspection was performed at Cooper T. Smith fleet Mile 180 by walking around the empty  barge and looking into the hopper.[10]  The cleanliness inspection is to ensure the cargo intended to be received by the barge (i.e. pet coke) is not commingled with cargo or debris left in the barge after the previous voyage.[11]  After the inspection, Professional Marine prepared a Certificate of Cleanliness.[12]

Simultaneous with the cleanliness inspection, Professional Marine performed a pre-load draft survey.[13]  The discharge of the M/S ARGONAUT was performed midstream. The MG-332 was loaded at 2140 hours on June 21, 1999.[14]   Thereafter, the barges were placed in Cooper/T.

---

[7]Exhibit "E" - Deposition of Professional Marine, p.95, l.4-9.

[8]Exhibit "F" - Cooper/T. Smith Stevedoring Stowage Plan.

[9]Exhibit "E" - Deposition of Professional Marine, p.36, l.24 thru p.37, l.2.

[10]Exhibit "E" - Deposition of Professional Marine, p. 36.

[11]Exhibit "E" - Deposition of Professional Marine, p.14, l.25; p.15, l.5.

[12]Exhibit "G" - Certificate of Cleanliness.

[13]Exhibit "E" - Deposition of  Professional Marine, p.53, l.4-15..

[14]Exhibit "H"- Cooper/T. Smith Barge List indication "Start" and "Completion" times and the rig that discharged the cargo.

Smith's fleet at Mile 180, awaiting transport to the St. John fleet at Mile 141.5. Roddy Hurst of Professional Marine performed a draft survey of the MG-332 on June 22, 1999.[15][16]  St. John received the barge June 23, 1999[17] where it remained under St. John's exclusive custody and control until it sank three days later on June 26, 1999.

Whether empty or loaded, a barge draft survey is performed by going onboard and measuring the freeboard in six locations on the barge.[18]  The sole purpose of the draft surveys was to determine the amount of cargo of coke off-loaded from the M/S ARGONAUT into the barge.[19]  For each of the nineteen (19) barges loaded, including the MG-332, a draft survey report was prepared.[20]  By comparing the pre-load drafts with the after-load drafts, Professional Marine computed the tonnage of cargo received by each barge.[21]  After all barges were surveyed and the calculations were completed, a Tonnage Certificate was prepared by Professional Marine and provided to Carbon to certify the amount of cargo off-loaded from the M/S ARGONAUT.[22]

Professional Marine performs its surveys while the barges are fleeted. Professional

---

[15]Exhibit "I" - Deposition of Roddy Hurst, p. 31, l. 5-25.

[16]Exhibit "J"- Barge Information Sheet prepared by Hurst on June 22, 1999.

[17]Exhibit "K" - St. John's Responses to Request for Admission-No. 1.

[18]Exhibit "E" - Deposition of Professional Marine, p. 15, l.12.

[19]Exhibit "E" - Deposition of Professional Marine, p. 107,l.22-108, l.5.

[20]Exhibit L " - Draft Survey of Barge MG-332.

[21]Exhibit "E" - Deposition of Professional Marine, pp. 68-72.

[22]Exhibit "M" - Tonnage Certificate.

Marine was not on site when the stevedores loaded the MG-332.[23] Professional Marine was not provided any information as to the maximum amount of cargo a barge could hold nor had any responsibility pertaining to the loading of the barges.[24]

Professional Marine did not inspect the barges for seaworthiness, integrity or soundness.[25] For its services, Professional Marine invoiced Carbon $5,525.00 which included reimbursement for boat transportation of $1,140.00.[26]

Professional Marine's draft readings of the MG-332 were completed June 22, 1999. The MG-332 sank four days later, 40 miles down river, after being delivered to St. John's Fleeting on June 23, 1999. Between June 23, 1999 and the June 26, 1999, severe weather including heavy rainfall passed over the St. John's Fleeting facility. Due to the physical condition of the barge and significant rain fall, St. John began pumping water from the void tanks of the MG-332 at 6:00 a.m. on June 25, 1999.[27] The last time the MG-332 was pumped was 2:00 a.m. on the morning of June 26, 1999. The MG-332 sank sometime before 12:00 noon on June 26, 1999, pulling the MG-39 down with it.

---

[23]Exhibit "E" - Deposition of Professional Marine, p.73, l.16-18; Exhibit "I" - Deposition of Roddy Hurst, p.68.

[24]Exhibit "E " - Deposition of Professional Marine, p.102, l.16 thru p.103, l.8; Exhibit "I" - Deposition of Roddy Hurst pp.42-43.

[25]Exhibit "E" - Deposition of Professional Marine, p.66, l.6-18; p.120, l.2-7

[26]Exhibit "N" - Professional Marine invoice dated June 30, 1999.

[27]Exhibits "O" and "P" - St. John Fleeting, Inc.'s Answers and Supplemental and Amending Answers to Interrogatories, specifically Nos. 3 and 8.

A recurrent theory of co-defendants is the MG-332 was overloaded despite the fact that the barge stayed afloat without incident from 2140 hours on June 21, 1999 until after June 24, 1999 when it started raining. In the event opponents of this motion attempt to impute Professional Marine with knowledge the MG-332 was supposedly overloaded, the argument is meritless. Professional Marine assumed no responsibility for the loading of the barges or their seaworthiness.[28]  Professional Marine did not load the MG-332 nor observed the loading. Cooper/T Smith Stevedoring's stowage plan dated June 16, 1999 indicated the MG- 332 was to be loaded with 1870ST (short tons) to a draft of ten feet eight inches (10.'08").[2930]  According to Professional Marine's draft survey, the MG-332 was loaded with 1831.384 short tons to a draft of ten feet six inches (10.'06.91407")[31]

For the sake of argument and  assuming opponents position is viable, which is denied, the argument fails based upon the testimony of Mr. Arthur Darden, expert marine engineer/naval architect. Mr. Darden was retained by barge owners, MG, after the sinking. He opined:

**Deposition of Arthur Darden, Jr.**
The Witness:

> I don't know. The barge doesn't have a loadline, so define
> excessive. To me as a naval architect, I don't think it was

---

[28]Exhibit "E" - Deposition of Professional Marine, p.102, l.16 - p.103, l.8; Exhibit "I" - Deposition of Roddy Hurst, pp.42-43.

[29]Exhibit "F "- Cooper/T. Smith Stevedoring Plan.

[30]Exhibit "E"- Deposition of Professional Marine, p82-84.

[31]Exhibit "L" - Draft Survey of MG-332, p.3 line 6. Draft Correction for Deformation.

excessively loaded because I ran the stability numbers and it had plenty of stability and plenty of righting arm which, as a naval architect, is the measure of stability. So, I don't think the 1,831 tons imperiled the stability of the barge.

Q:   What was the draft line on the barge at that point; do you know?

A:   I don't know. It was over 10 feet.

Q:   Okay. So loading that barge so that, it had a draft of over 10 feet was not overloaded to you?

A:   To me, as a naval architect?

Q:   Yes.

A:   No, because it still had plenty of stability even with the free surface.[32]

Accordingly, any argument that Professional Marine's responsibilities under the contract encompassed the loaded condition of the barge is without factual support.

## CONCLUSION

Carbon hired Professional Marine to determine the amount of cargo discharged from the M/S ARGONAUT. When one of the barges carrying Carbon's cargo of coke sank, Carbon was able to calculate its losses based on the draft surveys performed by Professional Marine.

Professional Marine's role was limited to performing a draft survey to obtain the amount of cargo unloaded from the M/S ARGONAUT. It was not responsible for the seaworthiness of the barge, its integrity, or its ability to transport the cargo as loaded by the stevedores.

Professional Marine Surveyors and Consultants, Roddy Hurst, and Wayne Coxe should be dismissed from this litigation as there is no evidence it owed a duty nor breached a duty owed

---

[32]Exhibit "Q" - Deposition of Arthur D. Darden, Jr., p.95. *See also*, pp.138 thru 142.

which contributed to the sinking of the Barge MG-332 and the subsequent losses.

Respectfully submitted, June 22, 2001.

EMMETT, COBB, WAITS & KESSENICH

J. FREDRICK KESSENICH (La. 7354)
MICHAEL W. MCMAHON (La. 23987)
1515 Poydras Street, Suite 1950
New Orleans, Louisiana 70112
Telephone: (504) 581-1301
Telefax: (504) 581-6020
E-mail: rjw@ecwko.com

## CERTIFICATE

I hereby certify that a copy of the foregoing pleading has been served on all counsel by placing same in the United States Mail, postage prepaid and/or via facsimile and/or by hand, postage prepaid on June 22, 2001.

- 9 -

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| TRAVELERS PROPERTY CASUALTY AND CII CARBON, LLC | * | CIVIL ACTION |
| | | |
| VERSUS | * | NO. 00-0130 |
| | | |
| THE MG-332 AND MGR-39, her engines, tackle, boilers, furniture, apparel, etc., *in rem,* MGT | * | SECTION "L"(2) |
| SERVICES, INC. d/b/a MGT TRANSPORT d/b/a MGT-T SERVICES, INC., *in personam,* | * | JUDGE FALLON |
| ST. JOHN FLEETING, INC., *in personam,* ST. JOHN FLEETING, LLC, *in personam,* | * | MAG. WILKINSON |
| ABC INSURANCE COMPANY, *in personam,* | * | |
| and XYZ INSURANCE COMPANY, *in personam* | | |
| *     *     *     *     *     *     *     * | * | |

**STATEMENT OF UNCONTESTED MATERIAL FACTS**


**NOW INTO COURT,** through undersigned counsel, comes WAYNE COXE,

RODDY HURST, and PROFESSIONAL MARINE SURVEYORS AND CONSULTANTS

(hereinafter collectively referred to as "Professional Marine"), who submit the following

uncontested material facts pursuant to Rule 56 of the Federal Rules of Civil Procedure:

1.     On December 24, 1998, Carbon entered into a Service Contract with Professional

Marine whereby Professional Marine was retained to perform cleanliness

inspections and draft surveys.

2.    Mr. Wayne Coxe, Senior Surveyor of Professional Marine performed a cleanliness

inspection for the Barge MG-332, among others, on June 18, 1999.

3.    Professional Marine provided a Certificate of Cleanliness to Carbon.

4.    Professional Marine performed a pre-load and after-load displacement survey.

5.    After all barges were surveyed and the calculations completed, a Tonnage

Certificate was prepared by Professional Marine and provided to Carbon to certify

the amount of cargo off-loaded from the M/S ARGONAUT.

6.    Professional Marine was not required to be and was not present when the MG

barges were loaded by the stevedores.

7.    Professional Marine's responsibilities were limited to: cleanliness inspections of

the barges; and 2. draft surveys of the barges.

8.    Professional Marine did not inspect the barges for seaworthiness, integrity or

soundness.

9.    For the services rendered, Professional Marine invoiced Carbon $5,525.00, which

included reimbursement for boat transportation of $1,140.00.

10.    In the expert opinion of Arthur Darden, the MG-332 was not overloaded with a

cargo of 1831 tons of pet coke.

Respectfully submitted, June 22, 2001.

EMMETT, COBB, WAITS & KESSENICH

J. FREDRICK KESSENICH (La. 7354)
MICHAEL W. MCMAHON (La. 23987)
1515 Poydras Street, Suite 1950
New Orleans, Louisiana 70112
Telephone: (504) 581-1301
Telefax: (504) 581-6020
E-mail: rjw@ecwko.com

## CERTIFICATE

I hereby certify that a copy of the foregoing pleading has been served on all counsel by placing same in the United States Mail, postage prepaid and/or via facsimile and/or by hand, postage prepaid on June 22, 2001.

- 3 -

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TRAVELERS PROPERTY CASUALTY AND CII CARBON, LLC | * | CIVIL ACTION |
| VERSUS | * | NO. 00-0130 |
| THE MG-332 AND MGR-39, her engines, tackle, boilers, furniture, apparel, etc., *in rem,* MGT | * | SECTION "L"(2) |
| SERVICES, INC. d/b/a MGT TRANSPORT d/b/a MGT-T SERVICES, INC., *in personam,* | * | JUDGE FALLON |
| ST. JOHN FLEETING, INC., *in personam,* ST. JOHN FLEETING, LLC, *in personam,* | * | MAG. WILKINSON |
| ABC INSURANCE COMPANY, *in personam,* | * | |
| and XYZ INSURANCE COMPANY, *in personam* | | |

\*    \*    \*    \*    \*    \*    \*    \*    \*

## NOTICE OF HEARING

**TO:   ALL COUNSEL OR RECORD**

**PLEASE TAKE NOTICE** that the undersigned will bring the attached Motion for

Summary Judgment for hearing in the United States District Court for the Eastern District of

Louisiana, 500 Camp Street, New Orleans, Louisiana, before the Honorable Eldon E. Fallon on

the **25TH day of July, 2001 at 9:00 a.m.**

_____

JUDGE

- 10 -

# SEE RECORD FOR
# EXHIBITS
# OR
# ATTACHMENTS
# NOT SCANNED