```
                                              FILED
                                          U.S. DISTRICT COURT
                                         EASTERN DISTRICT OF LA

                                          2001 JUL 26  PM 1:43

                                           LORETTA G. WHYTE
                                                CLERK
```

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TRAVELERS PROPERTY CASUALTY<br>AND CII CARBON, LLC | * | CIVIL ACTION |
| VERSUS | * | NO. 00-0130 |
| THE MG-332 AND MGR-39, her engines, tackle, | * | SECTION "L"(2) |
| boilers, furniture, apparel, etc., in rem, MGT<br>SERVICES, INC. d/b/a MGT TRANSPORT | * | JUDGE FALLON |
| d/b/a MGT-T SERVICES, INC., in personam,<br>ST. JOHN FLEETING, INC., in personam, | * | MAG. WILKINSON |
| ST. JOHN FLEETING, LLC, in personam,<br>ABC INSURANCE COMPANY, in personam, | * | |
| and XYZ INSURANCE COMPANY, in personam | | |
| * * * * * * * * | * | |

### SUPPLEMENTAL MEMORANDUM IN SUPPORT
### OF MOTION FOR SUMMARY JUDGMENT

Carbon is the only party that has sued Professional Marine. Its Amended Complaint does not allege any specific act of negligence, but makes broad allegations that Professional Marine observed the loading of the Barge MG-332 and is therefore negligent. Presumably, Carbon is alleging Professional Marine acquired knowledge the MG-332 was overloaded or improperly loaded.

Six months after being sued and after Professional Marine has incurred thousands of dollars in its defense, Carbon now pleads in two separate filings the MG-332 was not overloaded



(emphasis by Carbon).[1] Further, Carbon, in its opposition to the instant motion, goes into great detail to prove the MG-332 was loaded in accordance with the Cooper/T. Smith Stevedoring Stowage Plan. In light of Carbon's recent admissions, dismissal of Professional Marine is warranted as the allegations against Professional Marine are unfounded.

In the alternative and in the event the Court entertains the remaining arguments of opponents to this motion, Professional Marine suggest opponents failed to carry their burden to prove Professional Marine breach an obligation of its contract with Carbon. The argument by St. John and Carbon that Professional Marine had knowledge of the loaded condition of the barge, but failed to report to Carbon in sufficient time to allow Carbon to act on the information is a unsupported by evidence as required by Rule 56(e).

The argument relies upon the presumption that Carbon immediately processes the information received from Professional Marine to determine the stability of every barge laden with its cargo. Carbon failed to submit deposition testimony or affidavits supporting this position. There is no evidence to suggest Profession Marine's responsibility under the contract included determining if the barges it surveyed were overloaded or improperly loaded. There is no evidence to support opponents' arguments Professional Marine was required to convey the information it obtained immediately to Carbon. There is no evidence that Carbon utilizes the Displacement Survey information for any reason other than to determine how much cargo was discharged. There is a lack of evidence to suggest Carbon relies on Professional Marine's services for anything but draft surveys and the limited purpose of those surveys. The burden of

---

[1] Carbon's Opposition to Motion for Summary Judgment, p.2; Carbon's Amended Complaint against Cooper.

the non-moving party is to do more than simply show there is some metaphysical doubt as to the material facts. ***Burfield v. Brown, Moore & Flint*, 51 F.3d 583,588 (5th Cir 1995).** Opponents have not carried their burden.

The argument Profession Marine failed to report the condition of the barge to Carbon in sufficient time for Carbon to act is incredible. Carbon currently possesses all the information yet takes the position the barges were loaded in conjunction with the Stowage Plan and not overloaded. It cannot be seriously argued now that Carbon would have taken a different position on June 22, 1999 with less information. Along the same line, St. John's argument <u>creates</u> obligation under the Contract between Professional Marine and Carbon in an attempt to impute negligence on Professional Marine. How can St. John, who is not a party to the Contract and has no knowledge of the working relationship between Professional Marine and Carbon, declare what obligations Professional Marine had under the Contract? Not only does St. John lack standing to argue the intent of the parties to the contract, it lacks evidence.

Opponents have attempted to make an issue of the fact that the barge had a pre-laoding and post-loading list. A review of the Displacement Survey for Barge MG-332 (attached as Exhibit L to Professional Marine's original motion), evidences a list of less than 13 inches to the port on a barge 35 feet in breadth and 195 feet in length. When questioned by counsel for Carbon about the pre-load list, Wayne Coxe, on behalf of Professional Marine, testified that such a list would not be of concern with regard to the seaworthiness of the barge.[2] When questioned by counsel for St. John regarding deformation of the barge due do hogging and sagging, Mr. Coxe explained the difference between the forward, midship and after readings was non-

---

[2]Exhibit "A" - Deposition of Professional Marine, p.109.

existent.[3]   There is no evidence before the Court to the contrary.

## CONCLUSION

Considering the foregoing, Professional Marine, Wayne Coxe and Roddy Hurst suggest the Motion for Summary Judgment be granted in their favor and against plaintiff, dismissing the instant suit at plaintiff's cost.

Respectfully submitted, July 24, 2001.

EMMETT, COBB, WATTS & KESSENICH

*(signature)*

J. FREDRICK KESSENICH (La. 7345)
MICHAEL W. MCMAHON (La. 23987)
1515 Poydras Street, Suite 1950
New Orleans, Louisiana 70112
Telephone: (504) 581-1301
Telefax: (504) 581-6020
E-mail: rjw@ecwko.com

## CERTIFICATE

I hereby certify that a copy of the foregoing pleading has been served on all counsel by placing same in the United States Mail, postage prepaid and/or via facsimile and/or by hand, postage prepaid on July 24, 2001.

*(signature)*

---

[3]Exhibit "A", pp. 68-71.

```
 1              UNITED STATES DISTRICT COURT

 2             EASTERN DISTRICT OF LOUISIANA

 3

 4   TRAVELERS PROPERTY               CIVIL ACTION
     CASUALTY, et al.
 5                                    NO. 00-0130
     VERSUS
 6                                    SECTION "L"(2)
     THE MG-332 AND
 7   MGR-39, etc., et al.             JUDGE FALLON
                                      MAG. WILKINSON
 8

 9         30(b)(6) Deposition of PROFESSIONAL
     MARINE SURVEYORS & CONSULTANTS, through its
10   designated representative, RICHARD WAYNE
     COXE, and individually of RICHARD WAYNE
11   COXE, 7076 Richards Drive, Baton Rouge,
     Louisiana 70809, taken in the offices of
12   Emmett, Cobb, Waits & Kessenich, 1515
     Poydras Street, Suite 1950, New Orleans,
13   Louisiana 70112, on Tuesday, the 22nd day of
     May, 2001.
14

15

16   APPEARANCES:

17         CHOPIN, WAGAR, COLE, RICHARD,
              REBOUL & KUTCHER, L.L.P.
18         (By: John S. Bair, Esq.)
           Two Lakeway Center, Suite 900
19         3850 North Causeway Boulevard
           Metairie, Louisiana 70002
20
              ATTORNEYS FOR TRAVELERS PROPERTY
21            CASUALTY AND CII CARBON, L.L.C.

22         STAINES & EPPLING
           (By: Anthony J. Staines, Esq.)
23         3500 N. Causeway Boulevard, Suite 820
           Metairie, Louisiana 70002
24
              ATTORNEYS FOR ST. JOHN FLEETING,
25            INC.
```


DEFENDANT'S EXHIBIT A

PROFESSIONAL SHORTHAND REPORTERS, INC.  
Toll Free 1-800-536-5255  
http://www.psrdepo.com  

New Orleans, LA 70130  
(504) 529-5255  

5555 Hilton Avenue  
Suite 203  
Baton Rouge, LA 70808  
(225) 924-3488  

330 Marshall Street  
Suite 1200  
Shreveport, LA 71101  
(318) 213-1055

```
 1      Q    Okay.
 2      A    These are freeboards.
 3      Q    I understand.
 4      A    This is drafts here.
 5      Q    I got you.  Okay.  So when you
 6  transposed these, instead of putting the
 7  freeboard measurements, you just put the
 8  drafts so you could compare them?
 9      A    Yes.
10      Q    So you could have a comparison in
11  drafts, correct?
12      A    Now what?
13      Q    So you could have a comparison in
14  drafts between pre-loading and after
15  loading?
16      A    Correct.
17      Q    Because eventually that's what you
18  compared all these figures, pre and after,
19  to get your tonnage?
20      A    Your tonnage, correct.
21      Q    And with respect to this survey,
22  again, in Exhibit 6, let's start with the
23  pre-load first.  With respect to each
24  measurement you took, you came up with a
25  mean or an average of the forward, midship
```

PROFESSIONAL SHORTHAND REPORTERS, INC.
Toll Free 1-800-536-5255
http://www.psrdepo.com

601 Poydras Street
Suite 1615
New Orleans, LA 70130
(504) 529-5255

5555 Hilton Avenue
Suite 203
Baton Rouge, LA 70808
(225) 924-3488

330 Marshall Street
Suite 1200
Shreveport, LA 71:
(318) 213-1055

```
 1   and aft --
 2        A    Correct.
 3        Q    -- readings, correct?
 4        A    Correct.
 5        Q    Okay.  And then after you took
 6   your average -- in other words, you took
 7   your "forward port" and your "forward
 8   starboard" and took an average?
 9        A    Yes.
10        Q    Then you took your "midship port"
11   and "midship starboard" and took an average
12   and took your "after port" and "after
13   starboard" and took an average or mean, we
14   call it, correct?
15        A    Correct.
16        Q    And then you took your means and
17   you used formulas or calculations where you
18   added the mean for both the port and
19   starboard, and then added the "midship mean"
20   to that and came up with a "mean of means"?
21        A    Correct.
22        Q    And then after you did that, you
23   added these means together and you came up
24   with "Draft" -- I'm looking at No. 6 --
25   "Draft Corrected for Deformation"?
```

*PROFESSIONAL SHORTHAND REPORTERS, INC.*
*Toll Free 1-800-536-5255*
http://www.psrdepo.com

601 Poydras Street
Suite 1615
New Orleans, LA 70130
(504) 529-5255

5555 Hilton Avenue
Suite 203
Baton Rouge, LA 70808
(225) 924-3488

330 Marshall Stre
Suite 1200
Shreveport, LA 71
(318) 213-1055

```
 1      A    Correct.
 2      Q    Explain to me what that's all
 3  about.
 4      A    Deformation is really basically
 5  correcting for any hogging or sagging of the
 6  barge.
 7      Q    Any what?
 8      A    Hogging or sagging.  If a barge is
 9  like this (indicating) or like this
10  (indicating).  Hogging is (indicating).
11      Q    Hogging, you got a bell-shaped
12  curve to it?
13      A    Yes, and sagging is heavier in the
14  middle than the forward and aft end.
15      Q    Now, was there hogging or sagging
16  in this barge?
17      A    Let's see.  I will have to look
18  back and see.  Very little.
19      Q    Okay.  Now, is that one foot
20  six-tenths of an inch?  I'm not sure how --
21      A    One foot six and then .39 of an
22  inch.
23      Q    That's one foot 6.39844 inches?
24      A    Correct.
25      Q    Is that the deformation?
```

PROFESSIONAL SHORTHAND REPORTERS, INC.
Toll Free 1-800-536-5255
http://www.psrdepo.com

601 Poydras Street
Suite 1615
New Orleans, LA 70130
(504) 529-5255

5555 Hilton Avenue
Suite 203
Baton Rouge, LA 70808
(225) 924-3488

330 Marshall Street
Suite 1200
Shreveport, LA 71101
(318) 213-1055

```
 1      A     No.  That's the draft corrected
 2  for deformation.
 3      Q     Okay.  So to get your corrected
 4  deformation, you add the "midship mean" and
 5  the "mean of means" and divide it by two?
 6      A     Correct.
 7      Q     What would determine whether there
 8  was a hogging or a sagging?
 9      A     You compare the mean forward and
10  after to the midship.
11      Q     What kind of number would be
12  reflective of hogging or sagging?
13      A     On hogging, the forward and after
14  would be less than the midship, the draft.
15      Q     All right.
16      A     On sagging, the midship would be
17  greater than the forward and after mean.
18      Q     Was either present in this case
19  with this barge?
20      A     Very little difference.
21  Basically, non-existent.  It's like
22  comparing three-eighths of an inch to
23  one-quarter of an inch.
24      Q     Now, let me ask you this.  With
25  respect to the "Completion" recordations in
```

PROFESSIONAL SHORTHAND REPORTERS, INC.
Toll Free 1-800-536-5255
http://www.psrdepo.com

601 Poydras Street
Suite 1615
New Orleans, LA 70130
(504) 529-5255

5555 Hilton Avenue
Suite 203
Baton Rouge, LA 70808
(225) 924-3488

330 Marshall Stre
Suite 1200
Shreveport, LA 71
(318) 213-1055

```
 1       A    Correct.
 2       Q    In your field, draft surveys are
 3  not relied upon to determine whether a barge
 4  has been overloaded?
 5       A    No.
 6       Q    You had testified that you had
 7  noted that there was a list in this barge
 8  prior to being loaded; is that correct?
 9       A    Yes.
10       Q    Barge 332?
11       A    Yes.
12       Q    Was that information relayed on to
13  CII Carbon at any time prior to or even in
14  your report of the survey?
15       A    No.
16       Q    Do you have an independent
17  recollection of this list or is it by
18  comparing the numbers of the freeboard that
19  you're able to determine that there was a
20  list?
21       A    By comparing the freeboard.
22       Q    Okay.  Absent going ahead and
23  looking at those numbers and determining the
24  difference, would that be the type of list
25  that would be observable visually?
```

1    A    You could if they were visible,
2  yes.
3    Q    Is that the type of list that
4  would be of concern with regard to the
5  seaworthiness of that barge?
6    A    No.
7  MR. McMAHON:
8        Objection.
9  EXAMINATION BY MR. BAIR:
10   Q    You made note of zero to eight
11 inches of water in the wing tanks or the
12 void spaces on barge 332 prior to loading.
13 Is that a significant amount of water?
14   A    No.
15   Q    Is there any reason why it's noted
16 on the report other than to be accounted for
17 when doing the calculations for tonnage?
18   A    We put the amount of water on
19 every barge we do.
20   Q    Okay.  Does Mr. Hurst keep a
21 figure book similar to what you keep?
22   A    Yes.
23   Q    Looking at Exhibit No. 11, if you
24 could, the second page of that with your
25 handwritten notes, can you tell me what the