

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 AUG 13 PM 12: 57

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TRAVELERS PROPERTY CASUALTY  *  | | |
| AND CII CARBON, L.L.C.  * | CIVIL ACTION | |
|  * | NUMBER 00-0130 | |
| VERSUS  * | | |
|  * | SECTION "L" (2) | |
| THE MG-332 AND MGR-39, her engines, * | | |
| tackles, boilers, furniture, apparel, etc., *in rem*, * | | |
| MGT SERVICES, INC. d/b/a MGT TRANSPORT * | | |
| SERVICES, INC., d/b/a MGT-T SERVICES, INC. * | | |
| *in personam*, ST. JOHN FLEETING, INC., * | | |
| ST. JOHN FLEETING, L.L.C., ABC INSURANCE * | | |
| COMPANY, AND XYZ INSURANCE COMPANY* | | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**OPPOSITION TO MOTION TO PERMIT TESTIMONY OF EXPERT WITNESSES**

NOW INTO COURT, through undersigned counsel comes M/G-T- Services, Inc. (hereinafter "M/G-T Services") and for its opposition to St. John Fleeting, Inc.'s (hereinafter "St. John") motion to permit testimony of expert witnesses submits the following.

**I. FACTS & PROCEDURAL POSTURE**

This case arises from the sinking of two barges owned by MG-T Services while in St. John's Fleet on June 26, 1999. The original deadline to submit expert reports set forth by this Court was January 26, 2001. Three days after the expiration of the deadline St. John moved for an extension of time claiming it could produce its reports by February 15, 2001. M/G-T

1

Fee _____
Process _____
X Dktd _____
____ CtRmDep
Doc.No. 143

Services opposed St. John's motion; however, as it turned out the trial was continued to allow another defendant to be added. Then on July 18, 2001, the eve of the second expert deadline, St. John requested yet another extension, M/G-T Services again opposed any extensions and this Court subsequently denied St. John's second request for an extension of time. St. John now requests this Court permit the testimony of its expert witnesses despite its repeated failure to comply with the scheduling order.

**A. Calculation of Deadlines**

St. John Fleeting argues in its motion that it submitted its expert reports within the deadline provided by this Court. More specifically, St. John contends that counsel for M/G-T and St. John both miscalculated the date on which defense expert reports were due. Counsel for St. John had previously calculated the due date of their expert reports as July 19, 2001 and undersigned counsel for M/G-T Services has and does calculate the due date as July 20, 2001. Counsel for St. John now contends that the due date was actually July 23, 2001, the date that they first submitted their expert reports to counsel. St. John reasons that because the 60th day prior to the pre-trial conference in this matter fell on Saturday, July 21, 2001, the deadline under Federal Rule of Civil Procedure 6(a) should be moved to the next business day, which they contend is Monday, July 23, 2001, the 58th day prior to the pre- trial conference. Federal Rule of Civil Procedure 6(a) provides:

> In computing any period of time prescribed or allowed by…order of the court.. the day of the act, event or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday.. in which event the period runs until the end of **the next day** which is not one of the aforementioned days.

2

M/G contends that since this Court's Order requires counting backwards from the pre-trial conference day and the 60th day prior to the pretrial conference would be Saturday, July 21, 2001,the next business day would be Friday, July 20, 2001and not Monday, July 23rd, which would have already been counted. In addition, this Court's Scheduling Order, dated February 26, 2001, specifically provides: "Written reports of experts... **shall be obtained and delivered to counsel...** as soon as possible, but **in no event later than 60 days prior to Final Pretrial Conference Date**." Accordingly, St. John's expert reports were submitted outside the deadline set forth by this Court as the expert reports were not received until July 23rd, **the 58th day prior to the pre-trial conference.**

When calculating deadlines, Rule 6(a) of the Federal Rules of Civil Procedure, provides for the advancement a deadline to the next business day in the event that a deadline falls on a weekend. M/G contends that such calculation is applicable when counting forward. In this instance, the calculation required that the parties count backwards. For St. John to count backwards and then advance forward effectively disregards this Court's explicit order that **"in NO event"** shall the reports be delivered to counsel later than 60 days prior to the final pre-trial conference. Simply put, the Judge's order required that the expert report be delivered as soon as possible but in no event later than July 21st. St. John's expert report was delivered subsequent to the Court's deadline and consequently should be deemed untimely submitted, as this Court has already ruled.

**B. St. John has had Ample Time to Comply with the Court's Order**

M/G-T Services also brings to this Court's attention that this matter was previously set for trial in April, 2001 and has now been pending for **over a year and seven months**. Moreover, St. John had an **additional five months** from the deadline set forth in this Court's first scheduling order.

3

Accordingly, St. John had ample time to locate its experts, have them prepare a report and submit it to counsel. The Court issued its first scheduling order with a corresponding expert deadline of January 26, 2001. Nevertheless, St. John Fleeting failed to provide any expert reports at that time, and also moved for an extension of time at the last minute as on January 29, 2001, three days past the deadline, St. John Fleeting filed a motion for expedited hearing to extend the deadline for the exchanging of expert reports. At that time, St. John had stated that its expert reports could be obtained and submitted by February 15, 2001. The trial was then continued but despite St. John's contention that they were prepared to submit the reports by February 15, 2001 they did not. Instead they again waited to spring the expert reports on opposing parties at that last minute. Now six months after the original deadline for defendant's expert reports, we are once again in the same position where St. John has failed to comply with this Court's order to deliver its expert reports "no later than 60 days prior to the final pre-trial conference". The pattern here is clear, and the consequences of adopting this tactic and the subsequent failure to timely produce the expert reports should fall squarely on St. John. M/G respectfully requests that this Court deny St. John's repeated attempts to extend the deadline of which they were aware of for more than five months ago.

### C. St. John Has Failed to Demonstrate Good Cause

It is well established that District Judges have the power to control their dockets by refusing to give ineffective litigants a second chance to develop their case. *See Reliance Ins. Co. v. Louisiana Land and Exploration Co.*, 110 F.3d 253 (5th Cir. 1997), *Turnage v. General Electric Co.*, 953 F.2d 206, 208-09 (5thh Cir. 1992). As noted above, St. John was already given a second chance in January when the deadline passed and they failed to submit their reports or identify their experts. St.

John has not provided this Court with good cause why they should now be allowed a third opportunity to comply with the Court's orders.

This Court's scheduling Order stated that it would not permit any witness, expert or fact, to testify or any exhibits to be used unless there has been compliance with its order as it pertains to witness and/or exhibits, without an order to do so issued on motion for good cause shown. *See also* Fed. R.Civ. P. 16(b). St. John argues that if this Court determines it failed to comply with the deadlines then St. John's experts should still be allowed to testify as it has demonstrated good cause for the late submission of expert reports. St. John contends it has good cause for not meeting its deadlines because it had only recently been able to locate a fleeting expert, however, St. John has known since the inception of this suit that their fleeting procedures were at issue. Accordingly, they have had over a year and seven months to identify an expert.

St. John also offers as good cause the fact they were awaiting weather data, which they had subpoenaed from a non-party. However, despite knowing since the beginning that the weather was also issue in this case, St. John did not subpoena those records until **July 16, 2001**, just days before the expert deadline. Accordingly, the non-party was not responsible for the delay in obtaining the information but rather St. John failed to timely request the information.

With regard to the Breit Marine Survey, Hjalmar Breit's original survey of the barge records his findings regarding the condition of the barge upon salvage but does not render an opinion as to the cause of the sinking. The additional report, which he coauthored, in conjunction with a naval architect, is clearly a response to the testimony of M/G-T Services expert who was timely identified, and whose report was produced in compliance with this Court's original scheduling order. It was

5

only after St. John had deposed M/G-T Services' naval architect that this report from Breit Marine's naval architect was sought. The inclusion of Hjalmar Breit's name on the report is merely an effort by St. John to circumvent this Court's order and cover its failure to even generically name a naval architectural expert prior to the expiration of the deadline. As St. John's naval architect was not identified in any manner prior to the expiration of the deadline and his report was submitted after the deadline has passed M/G-T Services strenuously objects to allowing his testimony.

In *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320 (5th Cir 1998) the Court reviewed a district Court's denial of a request for leave to designate experts and file expert reports a week beyond the scheduling order's deadline. The Court reviewed the trial court's decision to exclude expert testimony under the abuse of discretion standard and considered (1) the explanation for the failure to identify the witness (2) the importance of the testimony; (3) potential prejudice in allowing the testimony and (4) the availability of a continuance to cure such prejudice.

This case has been pending over a year and seven months and has already been continued once. Moreover, this Court had made it clear to all the parties that the second trial date, which had been chosen and agreed to by all counsel, would not be continued. Second, St. John has offered this Court no good reason for its delay in submitting reports. In fact, St. John had indicated in January it would be able to submit its expert reports by February but it did not. Further, the issues had been clearly determined at the outset of this case and St. John has had over a year and half to develop their case and obtain expert reports. St. John has also had and an additional five months since the expiration of the first deadline. The fact that they waited until the last minute to subpoena weather reports and locate expert witnesses does not constitute good cause. Thirdly, allowing the late

designation of four experts, now, with only forty days remaining before trial would prejudice M/G-T Services as the experts were sprung at the last minute and would have to be deposed. M/G-T Services notes that it took a year to depose some of St. John's own employees and another 6 months to depose M/G-T Services' expert. It is simply unfair and prejudicial to allow St. John to at the last minute sandbag opposing counsel with four experts, which had not even been identified by name until days before the deadline.

Finally, St. John has solicited testimony regarding the weather conditions at the time of the sinking from numerous employees on the river at the time, and all counsel have the national climatological report regarding rainfall in the area. Also, the four surveyors who examined the barge after the sinking aptly recorded the condition of the MG332 and commented on the sinking. Accordingly, if the testimony of St. John's experts were so vital to their case, then they clearly should have identified their experts and submitted the reports long before the deadline. Instead St. John waited to review M/G-T Service's expert reports and take the depositions of M/G-T's witnesses prior to submitting their experts and their reports, a luxury which M/G-T Services will not have before trial, due to the last minute submission tactics of St. John.

## CONCLUSION

For the reasons set forth above, M/G-T Services respectfully requests that this Court uphold its prior ruling on this matter and deny St. John's motion to permit the testimony of its expert witnesses.

Respectfully submitted,

GEORGE J. NALLEY, JR.
A Professional Law Corporation

_____
GEORGE J. NALLEY, JR.            (9883)
CHRISTOPHER J. STAHULAK    (27094)
Heritage Plaza - Suite 920
111 Veterans Memorial Blvd.
Metairie, LA 70005
(504) 838-8188
Attorneys for M/G-T Services

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this ___13th___ day of August, 2001 served a copy of the foregoing pleading on counsel for all parties to this proceeding by mailing the same by United States mail, properly addressed, and first class postage prepaid.

_____
GEORGE J. NALLEY, JR., APLC